IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Patrick Weckesser, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Civil Action No. 2:16-cv-02053-RMG ) ) |
| v. | ) **ORDER AND OPINION** ) |
| Knight Enterprises S.E., LLC, | ) ) ) |
| Defendant. | ) ) |

This matter is before the Court on Plaintiffs' Motion for Final FLSA Certification (Dkt. No. 99).[1] For the reasons set forth below, the Court grants the motion.

## I. Facts

Plaintiff Patrick Weckesser, a cable installation technician, filed this class and collective action on behalf of himself and all others similarly situated against Defendant Knight Enterprises S.E., LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act.[2] (Dkt. No. 1.) The Court granted conditional class certification on August 27, 2018. (Dkt. No. 36.) Thirty-three individuals have joined the case as opt-in plaintiffs, for a total of thirty-four plaintiffs. (See Dkt. Nos. 5, 8, 14, 46 - 61.)

---

[1] Both Plaintiff and Defendant note that, traditionally, under the two step FLSA analysis, a defendant moves for decertification rather than a plaintiff moving for final certification. However, while unusual, plaintiffs motions have been previously granted. *See Mayhew v. Loved Ones in Home Care, LLC*, No. 2:17-CV-03844, 2019 WL 2428745, at *1 (S.D.W. Va. June 10, 2019) (granting plaintiffs' motion for final FLSA certification). Further, here, the Court finds it important to consider whether final certification is proper on Plaintiffs motion given the more lenient standard for conditional class certification previously applied and the complicated scheduling of this case, involving multiple stays and extensions of deadlines, some affecting deadlines for dispositive motions. Finally, Defendant represents that they filed their Response to Plaintiff's motion in lieu of a motion for decertification. (Dkt. No. 111 at 1 n.1.)

[2] Plaintiffs are no longer proceeding under the South Carolina Payment of Wages Act Claim and will not seek to certify a Rule 23 class action. (Dkt. No. 91 at 2 n.1.)

Specifically, Plaintiffs allege that they and all other similarly situated cable installation technicians who worked for the Defendant were misclassified as independent contractors and deprived of overtime and minimum wage in violation of federal law. Plaintiffs were all hired as independent contractors to perform cable installation work, and therefore were not paid for any hours worked overtime. (Dkt. Nos. 1 at ¶¶ 26, 32; 6-2; 34-1 at ¶ 5; 99-2 at 3 – 4; 99-3 at 3, 9; 99-8 at 8.) Each Plaintiff allege that they provided the same cable installation services for Time Warner customers, and all performed their work under policies, and a schedule, set by Defendant. (Dkt. Nos. 99-2 at 3; 99-3 at 4.) Each Plaintiff was allegedly required to perform the jobs assigned to them by Defendant Knight, were required to use certain equipment, such as computer programs, provided by Defendant, were required to wear Knight uniform, were required to have a Knight logo on their truck, and were not able to work for other companies. (Dkt. Nos. 99-3 at 3, 11; 99-4 at 8 – 9; 99-5 at 4; 99-6 at 16; 99-11 at 6, 8; 99-12 at 4.) Most notably, each Plaintiff were required to sign the same Independent Contractor Services Agreement, which declared that each Plaintiff was an independent contractor and not an employee. (Dkt. No. 6-2; 34-1 at ¶ 5.)

Plaintiffs now move for final certification, and Defendant opposes. (Dkt. Nos. 99, 111.)

## II. Legal Standard

The FLSA allows that a collective action for unpaid minimum wages may be maintained "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). After the district court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, generally, a defendant is permitted to move "to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated to

the extent that a collective action would be the appropriate vehicle for relief." *Pelczynski v. Orange Lake Cntry. Club, Inc.*, 284 F.R.D. 364, 368 (D.S.C. 2012).

At this second stage,[3] the district court applies a heightened fact-specific standard to the "similarly situated" analysis. *Steinberg v. TQ Logistics, Inc.*, No. 0:10-cv-2507-JFA, 2011 WL 1335191, at *2 (D.S.C. Apr. 7, 2011); *see also Pelczynski*, 284 F.R.D. at 368. The plaintiff maintains the burden of proving that he or she is similarly situated to the opt-in plaintiffs. *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 886 (D. Md. 2011). If the court determines that the plaintiffs are not, in fact, similarly situated, it may decertify the class, dismiss without prejudice the opt-in plaintiffs' claims, and permit the named plaintiffs to proceed on their individual claims. *Curtis v. Time Warner Entm't.-Advance/Newhouse P'ship.*, No. 3:12-cv-2370-JFA, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013).

In this second stage, "similarly situated" means "'similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined.'" *Pelczynski*, 284 F.R.D. at 368 *quoting De Luna–Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004). "In FLSA actions, persons who are similarly situated to the plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements or pay provisions." *Id.* (internal quotation marks omitted.)

### III. Discussion

"Courts have identified a number of factors to consider at this [second] stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses

---

[3] Which, here, has been initiated by Plaintiff's motion and Defendant's response in lieu of a motion for decertification.

3

available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis*, 2013 WL 1874848, at *3 (citation and internal quotation marks omitted). The Court addresses each in turn:

### A. Disparate Factual or Employment Settings

"The first factor of the decertification analysis involves an assessment of whether Plaintiffs have provided evidence of a company-wide policy which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary." *Regan v. City of Charleston*, 2:13-cv-3046-PMD, 2015 WL 6727079, at *4 (D.S.C. Nov. 3, 2015) (citations omitted) (declining to decertify class). *MacGregor v. Farmers Ins. Exchange*, No. 2:10-cv-03088-DCN, 2011 WL 2981466, at *2 (D.S.C. July 22, 2011) ("Plaintiffs are similarly situated if they were victims of a common policy or plan that violated the law.")

To begin with, Defendant argues that there was no "common policy" as the Court will need to apply the six-factor economic realities test to determine whether each Plaintiff was an independent contractor or employee. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). Both Parties correctly identify the test, but the Defendant's argument misses the fact that there is a clear, undisputed policy common to each Plaintiff. Namely, each Plaintiff was required to sign the Independent Contractor Services Agreement, which declared that each Plaintiff was an independent contractor and not an employee. (Dkt. No. 6-2; 34-1 at ¶ 5.) *See Rehberg v. Flowers Baking Co. of Jamestown, LLC*, No. 3:12-CV-00596-MOC, 2015 WL 1346125, at *15 (W.D.N.C. Mar. 24, 2015) ("Most tellingly, all distributors are subject to the same common classification by Defendants as independent contractors, and thus, not entitled to overtime pay. The court finds that Plaintiffs have provided sufficient evidence of a company-wide policy which may violate the FLSA."); *Collinge v. IntelliQuick Delivery, Inc.*, No. 2:12-CV-00824 JWS, 2015

4

WL 1292444, at *8 (D. Ariz. Mar. 23, 2015) ("it bears noting that despite IntelliQuick's contention that it exerts disparate control over its drivers, IntelliQuick uniformly treats all of its drivers as independent contractors, and this decision does not turn on a single individualized factor.").

Further, in addition a clear common policy lending itself to collective treatment, review of the economic realities test does not demonstrate that the evidence for each Plaintiff would vary too widely to require individualized inquiries. The six-factor economic realities test assess:

> 1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304–05. Plaintiffs have shown that these factors will substantially be assessed the same across the Plaintiffs, and submitted evidence that the Plaintiffs were: subject to the same policy of being treated as independent contractors, received their work assignments and schedules from Defendant, required to invest in certain equipment, required to wear and use Defendant's logos, provided the same training, had long-standing work relationships with Defendant, and performed services that were central to Defendant's business. Further, the Plaintiffs all performed work in North Carolina or South Carolina, had the same job position, were subject to similar supervision (though by different supervisors), and were paid according to the same piece-rate system. While the Court does not assess the merits or credibility of this evidence, it notes that the evidence presented easily permits assessment of the economic realities test on a class wide basis.

Defendants have identified some differences among the collective action members: some had a different supervisors, some contracted as individuals and others as sole proprietorships,[4]

---

[4] The fact that a plaintiff formed a corporation does not automatically defeat a misclassification claim, and instead, regardless of whether Plaintiffs contracted individually or as some form of legal entity, the Court is required to -assess the economic realities test. *See, e.g. Gustafson v. Bell Atl.*

5

others realized more profit from their work, and some worked longer hours. (Dkt. No. 111 at 11 – 13.) However, "[a] collective action does not necessitate that there be no differences among class members, nor does it prohibit individualized inquiry in connection with fashioning the specific relief or damages to be awarded to each class member." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 311 (D. Md. 2014) (citations omitted). Instead, "[t]he court should determine whether 'there is a meaningful nexus that binds Plaintiffs' claims together and that the similarities in their claims outweigh their differences.'" *Id.* Here, the meaningful nexus is the Plaintiffs' classwide treatment as independent contractors subject to similar oversight, direction and work from Defendant Knight. Indeed, Defendant's defense under the economic realities test is based largely on class-wide arguments regarding the manner in which Defendant structured their relationships with all of their installation technicians. (*See* Dkt. No. 111 at 1 – 3.) Given the well-established company policy of classifying all installation technicians as contractors, the case is well-suited for collective treatment and the Plaintiffs are similarly situated with similar factual and employment settings. *See Rehberg*, 2015 WL 1346125, at *17 ("Defendants…ignore the larger picture of the issue at hand—that all distributors are subject to Defendants' uniform [contractor] policies.").

## B. Defenses

Defendant asserts that two individualized defenses prevent this matter from proceeding collectively: First, Defendant asserts they will argue equitable estoppel regarding Plaintiffs who reported income and business expenses to the IRS as a sole proprietor, and; Second, there is a lack

---

*Corp.*, 171 F. Supp. 2d 311, 326 (S.D.N.Y. 2001) ("Although he technically formed his own corporation, the record does not show that plaintiff was truly 'in business' for himself… We therefore hold that plaintiff is an 'employee' under the broad definition of the FLSA, and is therefore entitled to overtime pay under FLSA….")

of a case and controversy given certain employees who have no potential unpaid overtime based on Defendant's calculations. However, Plaintiff cites no FLSA case indicating that a Plaintiff cannot claim misclassification where he previously reported income as a sole proprietor rather than an employee, instead relying on a Second Circuit case regarding breach of fiduciary duty, *Ginor v. Landsberg*, 159 F.3d 1346 (2d Cir. 1998), and multiple bankruptcy cases. Instead, as previously held, liability here will turn on a class-wide assessment of the economic realities test regardless of whether a plaintiff was paid as a legal entity rather than as an individual. The Court is further dubious on the merits of Defendant's argument, as it would undermine the purpose of the FLSA and recognition of misclassification claims, permitting employers who misclassify employees to evade liability because of their own impropriety in requiring employees to falsely identify as employers or sole proprietorships. Regardless, "[t]he presence of defenses that require individualized inquiries does not necessarily require decertification if common issues and facts predominate...." *Rehberg*, LLC, 2015 WL 1346125, at *17. Further, as a legal issue for the court to determine, this defense does not render the class unmanageable.

Regarding the alleged lack of a case and controversy, Defendant's argument highlights the nature of the class-wide controversy. Defendant asserts it has presented an economic analysis by an expert showing that at least three Plaintiffs worked zero overtime hours, and therefore are not entitled to damages. (Dkt. No. 111 at 13.) Therefore, as certain Plaintiffs have "no possibility of recovering any damages," Defendant argues there is no case in controversy for these particular Plaintiffs. However, this argument goes to the heart of the dispute, as Plaintiffs contend Defendant's calculations are incorrect, and instead argue that Plaintiffs' hours were typically closer to a minimum of 10 hours per day, with a minimum of 14 or more hours of overtime every week. (Dkt. No. 99-5 at 11, 16; 99-9 at 3, 106 at 7.) Therefore, regardless of Defendant's expert's

7

opinion, there is a case and controversy regarding whether these Plaintiffs are entitled to damages and, as noted above, the fact that a case may require some assessment of individual damages does not defeat collective certification. *Butler*, 47 F. Supp. 3d at 311.

### C. Fairness and Procedural Considerations

"The Court has broad discretion in determining whether the case should continue as a collective action after discovery." *Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 368 (D. Md. 2015). Defendant largely reiterates their argument that the Plaintiffs are not similarly situated in arguing that fairness and procedural considerations require decertification. (Dkt. No. 111 at 20.) Defendant does raise the procedural concern of assessing damages for each of the plaintiffs in this case, citing to a Seventh Circuit decision, *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 773 (7th Cir. 2013), similarly dealing with independent contractors. However, the Court in *Espenscheid* was dealing with 2,341 plaintiffs, a far-cry from the thirty-four Plaintiffs at issue here. *Id.* Instead, if liability is established, the Court is confident in the Parties ability to address damages for only thirty-four Plaintiffs here. *See Richard v. Flowers Foods, Inc.*, No. CV 6:15-2557, 2018 WL 5305377, at *10 (W.D. La. Aug. 13, 2018) (for 114 plaintiffs, holding that "once liability is established, damages may be computed with a combination of Flowers' business records and class members' good-faith estimates of their work hours. ... It is well-settled that individualized damages do not undermine the fact that common issues predominate."). The Court instead finds that fairness and procedural considerations weigh in favor of final certification, including considerations of judicial economy and permitting cable installation technicians who were similarly classified by Defendant to proceed as a group. Therefore, for the same reasons as above and having considered this case's procedural posture and the record facts, the Court finds that final certification is fair.

Each of these factors indicates that Plaintiffs are sufficiently similar with respect to the legal issues to be determined and, as a result, that decertification is not warranted and the class is entitled to final certification.

**IV. Conclusion**

For the reasons above, the Court **GRANTS** Plaintiffs' Motion for Final FLSA Certification (Dkt. No. 99) and **DENIES** Defendant's request for decertification (Dkt. No. 111 at 22).

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Court Judge

July 22, 2019
Charleston, South Carolina