IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| PATRICK WECKESSER, *on behalf of himself and all others similarly situated*, ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) ) | Civil Action No. 2:16-cv-2053-RMG |
| ) | |
| KNIGHT ENTERPRISES, S.E. LLC ) | |
| ) | |
| Defendant. ) ) ) | |

## STIPULATION OF SETTLEMENT AND RELEASE

Subject to the approval of the United States District Court for the District of South Carolina ("Court"), and pursuant to 29 U.S.C. § 216(b) of the federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), the Parties, by and through their counsel, agree to the following stipulation of Settlement and Release ("Stipulation of Settlement").

## RECITALS

Whereas, on June 20, 2016, Named Plaintiff Patrick Weckesser filed an action entitled *Patrick Weckesser, on behalf of himself and all others similarly situated v. Knight Enterprises, S.E., LLC*, No. 2:16-cv-2053-RMG, in the United States District Court for the District of South Carolina (the "Action");

Whereas, in the Action, the Named Plaintiff alleged that Defendant violated the Fair Labor Standards Act ("FLSA"), by misclassifying Plaintiff and the putative opt-in class as independent contractors instead of employees and, thereby, owed overtime and minimum wages. Plaintiff Weckesser also brought a claim under the South Carolina Payment of Wages Act ("SCPWA") based on various deductions made from his pay that he alleged violated the prior notice requirements of the same. The SCPWA claim was later voluntarily dismissed from the litigation. The Named Plaintiff sought damages, equitable relief, penalties, attorneys' fees and costs, on his own behalf and on behalf of similarly situated individuals;

Whereas, on October 20, 2016, Defendant filed a motion to dismiss and compel arbitration which was subsequently denied by the Court on January 27, 2017;

Whereas, on February 24, 2017, Defendant filed an interlocutory appeal of the Court's January 2017 order to the Fourth Circuit Court of Appeals;

Whereas on June 12, 2018, the Fourth Circuit Court of Appeals issued an order unanimously affirming the Court's prior January 2017 order;

Whereas, on July 19, 2018, Defendant filed its Answer asserting various affirmative defenses;

Whereas, on July 19, 2018, Plaintiff filed his motion for conditional class action certification under the FLSA and for 496 days of equitable tolling, the time period during which the case was stayed on appeal to the Fourth Circuit. This Court granted the motion on August 17, 2018. Thereafter, Plaintiffs' counsel promptly disseminated notice to the putative opt-in class and thirty-three individuals either joined the collective prior to notice being issued or opted-in during the notice period. Additional individuals joined the case but either subsequently opted-out of the litigation, were dismissed without prejudice for failure to cooperate in the discovery process, or were time-barred and removed from the litigation, also without prejudice.[1] Therefore, the scope of the settlement class consists of 33 Plaintiffs who filed consent forms with this Court and worked for Defendant, along with the Named Plaintiff, Patrick Weckesser, for a grand total of 34 individuals;

Whereas, the Parties participated in a mediation with David McCormack on May 8, 2019, but were unable to resolve their claims;

Whereas, the Parties conducted significant discovery during the discovery phase of this litigation, including production of over one-hundred thousand pages ("100,000") of written documents and took or defended 12 depositions in three cities;

Whereas, the Court conducted a bench meeting on June 7, 2019, and scheduled this case for a 4-day bench trial to commence on August 26, 2019;

Whereas, Plaintiffs' counsel moved for final step-two FLSA collective action certification on June 25, 2019, which Defendant opposed as its contemporaneous motion for decertification. The Court granted step-two certification of the FLSA collective action on July 22, 2019;

Whereas, in agreeing to the settlement embodied in the Stipulation of Settlement, the Parties have considered: (i) the facts developed during the pendency of the Action and the law applicable thereto; (ii) the attendant risks of continued litigation and the uncertainty of the

---

[1] Those individuals that opted-out of the litigation include Jermeil Bowers, Richard Fulton, Michael Gallman, and Gary Leysen. Those individuals who were dismissed without prejudice for failure to participate in the discovery process include Martin Davila, Jonathan Davy, and Brian Rowland. The time-barred individuals include Franklin Adams and Richard Mason. These nine ("9") individuals will not participate in the settlement process.

outcome of the Action; (iii) the desirability of permitting the settlement to be consummated according to the terms of the Stipulation of Settlement; and (iv) the conclusion of the Parties and their counsel that the terms and conditions of this Agreement are fair, reasonable, adequate, and that it is in the Parties' best interests to settle the Action as set forth below;

Whereas, the Parties agree to cooperate and take all steps necessary and appropriate to dismiss this Action with prejudice; and

Whereas, it is the intention of the Parties that this Stipulation of Settlement shall constitute a full and complete settlement of all Released Claims against all Released Parties.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** among the Parties, by and through their respective attorneys of record, and subject to the approval of the Court, that in consideration of the foregoing and of the promises and mutual covenants contained herein, and other good and valuable consideration, the Action shall be settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## 1.    DEFINITIONS

For purposes of this Stipulation of Settlement, the following definitions shall apply, in addition to the definitions set forth in other sections of this Stipulation of Settlement:

A.    "Defendant" shall mean and refer to Knight Enterprises, S.E., LLC; Jeffry Knight, Inc., Jeffry Knight in an individual capacity, and all of Defendant's subsidiaries, parents and affiliates and corporate officers in an individual capacity.

B.    "Action" shall mean and refer to the action entitled *Weckesser, et. al. v. Knight Enterprises, S.E. LLC*, Case No. 2:16-cv-2053 pending in the United States District Court for the District of South Carolina;

C.    "Named Plaintiff" means Patrick Weckesser.

D.    "Opt-In Plaintiffs" shall mean the 33 individuals, aside from Weckesser, who filed consent forms with the Court requesting to participate in this Action that remain party plaintiffs in the litigation.

E.    "Court" means the United States District Court for the District of South Carolina.

F.    "Settling Plaintiffs" shall mean the Named or Opt-In Plaintiffs who are included within the scope of the settlement and who timely execute and return a "Release of Claims Form."

G.    "Rejecter" shall mean the Named or Opt-In Plaintiff within the scope of the settlement class who communicates a written rejection within the timeline outlined below.

H.   "Non-Responder" shall mean the Named or Opt-In Plaintiff within the scope of the settlement class who does not return a Release of Claims Form and does not meet the definition of a Rejecter.

I.   "Plaintiffs' Counsel" shall mean the law firm of Falls Legal, LLC.

J.   "Defendant's Counsel" shall mean the law firms of Nelson Mullins Riley & Scarborough and Weber, Crabb & Wein, P.A.

K.   "Settlement Effective Date" shall mean the date upon which the Court enters an Order granting approval of the Stipulation of Settlement.

L.   "Released Claims" has the meaning set forth below.

M.   "Released Parties" means Defendant together with its owners, parent companies, divisions, subsidiaries, affiliates, trustees, predecessors, successors, transferees, assigns, insurers, officers, directors, members, employees, agents, and representatives.

## 2.   SETTLEMENT AMOUNT

A.   In consideration for the actions, promises and mutual covenants and releases described herein, and subject to court approval, Defendant agrees to pay the total sum of **$600,000.00** (the "Settlement Amount"), subject only to the offsets described in Section 4(F) below, to resolve all Settling Plaintiffs' Released Claims.  The Settlement Amount includes all amounts to be paid by Defendant, including amounts for payments to the Settling Plaintiffs, attorneys' fees, litigation costs and expenses of Plaintiffs' Counsel, and service award payments, as described below. The Settlement Amount will be apportioned as follows:

(1) Three-Hundred and Twenty Five Thousand Dollars ($325,000.00) will be distributed pro rata to the Plaintiffs.  This amount is only subject to the offsets described in Section 4(F) below. The allocation of this amount will be based on a formula developed by Plaintiffs' counsel exclusively for settlement purposes. All amounts to Settling Plaintiffs will be reported on an IRS Form 1099 at year-end. Defendant will cut and issue the checks for each individual Settling Plaintiff and deliver them to Plaintiffs' counsel by a secure delivery method, such as FedEx, consistent with the timeline described further below. Defendant will be responsible for issuing Form 1099s to Settling Plaintiffs and Plaintiffs' counsel will ensure Defendant receives updated addresses through the settlement process so that Defendant may update its database with such information. Subject to the Court's approval of the service awards described further below, any applicable service award will be added to the total of the 1099 check from which no taxes will be withheld.

4

a. It is expressly understood and agreed that the receipt of any payment under this Settlement Agreement will not entitle any Plaintiff to additional compensation or benefits from Defendant.

b. Each Plaintiff's pro rata share of the Settlement Fund was calculated based on the weeks they worked over a three-year statute of limitations period, with prior approved Court tolling. Each Plaintiff's share is listed on the Payment Schedule attached hereto as Exhibit A, along with any applicable offset.

c. Each Settling Plaintiff shall be entitled to obtain his or her own independent tax advice concerning the proper income reporting and tax obligations regarding any and all payments and/or other remuneration he or she receives or obtains pursuant to this Stipulation of Settlement, and shall further assume the responsibility of remitting to the IRS and any other relevant taxing authorities any and all amounts required by law to be paid out of any monies received, or other remuneration obtained, under this Stipulation of Settlement, without any contribution whatsoever from any of the Released Parties or Plaintiffs' Counsel. Nothing in this Stipulation of Settlement shall be construed as Defendant or Plaintiffs' Counsel providing any advice regarding the reporting or payment of taxes or the tax consequences of a Settling Plaintiff's participation in any portion of this Stipulation of Settlement.

(2) Forty-thousand Dollars ($40,000.00) in Service Awards: Subject to Court approval, Named Plaintiff Weckesser and Opt-In Plaintiffs Legree and McKinnon shall receive ten thousand dollars each ($10,000.00) in recognition for their services provided in this litigation. These three individuals have contributed substantial time, resources, and efforts on behalf of the class since the beginning of the litigation. Additionally, subject to Court approval, Plaintiffs Dixon Annikey, Blake Ebert, Alfonso Leggette, and Willie Malone, shall receive two thousand five hundred dollars ($2,500.00) each for their service as Opt-In Plaintiffs through a portion of the case and the time, resources, and efforts, they expended on behalf of the class, including providing a deposition and participating in written discovery. The total of the service awards is $40,000.00. Defendant agrees not to oppose any request made by Plaintiffs to the Court for the above service awards. With respect to any service award approved by the Court, Defendant shall add service awards to the 1099 check issued to each Settling Plaintiff. Furthermore, it is understood that should the Court

5

not approve any portion of the requested service awards in this paragraph, such funds that are not approved will not revert to Defendant and, instead, will be reallocated to the Settling Plaintiffs on a pro rata basis.

**B.** Subject to Court approval, Defendant will pay Plaintiffs' counsel Two Hundred Thirty Five Thousand Dollars ($235,000.00) in attorneys' fees and expenses, for which Defendant will issue an IRS Form 1099 to Plaintiffs' counsel at year end. Defendant agrees not to oppose any request made by Plaintiffs to the Court for the above amount in attorneys' fees and expenses. Plaintiffs' Counsel shall not be entitled to any additional attorneys' fees and expenses in connection with this Litigation in excess of what is approved by the Court in connection with this Settlement Agreement. If the Court refuses to approve Plaintiffs' counsel's attorneys' fees and costs as stated herein, and Plaintiffs' counsel must take any additional action to obtain approval, such as filing a fee petition with the Court, Defendants agree not to oppose any such action as long as Plaintiffs' counsel requests no more than $235,000.00 in attorneys' fees and costs in such petition. All payments for attorneys' fees and costs shall be made within 35 calendar days from the date that the Court issues an Order approving this settlement.

**C.** Plaintiffs and Defendant agree to take all action necessary to seek approval of the terms of this settlement by the United States District Court for the District of South Carolina in conjunction with the case captioned *Weckesser, et. al. v. Knight Enterprises S.E., LLC,* Case No. 2:16-cv-2053 (D.S.C.) (the "Action"). This includes jointly moving the Court to approve the terms of this settlement. Plaintiffs also agree to take all action necessary to have the claims in the Litigation dismissed with prejudice.

**3.**     **COMMUNICATING SETTLEMENT OFFERS; REJECTORS AND NON-RESPONDERS**

**A.** Plaintiffs' Counsel shall be responsible for distributing the notice of this settlement to the Plaintiffs within the scope of the settlement class. To be eligible to receive his/her settlement checks, each Plaintiff within the scope of the settlement class must sign and return a Release Form, attached hereto as Exhibit B, no later than 90 days following Plaintiffs' Counsel's receipt of the settlement checks.

**B.** Each Plaintiff within the scope of the settlement class shall have the opportunity to accept or reject his/her individual settlement offer. Any rejections must be communicated in writing to Plaintiffs' Counsel no later than 30 days following Plaintiffs' Counsel's receipt of the settlement checks. A Plaintiff within the scope of the settlement class who communicates a rejection is referred to herein as a "Rejecter." Rejecters shall be dismissed without prejudice and he/she shall have thirty (30) days from the date the rejection is communicated to Plaintiffs' Counsel within which to file a subsequent claim, with the tolling from this case remaining intact, should he or she choose to do so. Failure to re-file his/her claim within this timeline will result in his/her forfeiture of consent-based tolling. Rejecters will not be bound by the Release outlined herein. Plaintiffs' Counsel will promptly advise Defendant's Counsel in the event any such

6

rejections are received and will return the settlement checks made payable to any such Rejecters to Defendant's Counsel. The settlement monies allocated to any such Rejecters shall revert to Defendant.

    **C.**    Any Opt-In Plaintiff within the scope of the settlement class who does not return a Release Form and does not meet the definition of a Rejecter is referred to herein as a "Non-Responder." Non-Responders will be dismissed from the Action without prejudice. Plaintiffs' Counsel agrees to return the settlement checks made payable to any such non-responders following the close of the non-responder period, 90 days after Plaintiff's Counsel's receipt of the settlement checks.

    **D.**    Counsel for the Parties agree, within the boundaries of applicable ethical rules, that they will not attempt, directly or indirectly, to encourage any Plaintiff to reject his or her individual settlement offer. Plaintiffs' Counsel further agrees, within the boundaries of applicable ethical rules, that they will recommend acceptance of the individual settlement offer to each Plaintiff within the scope of the settlement class.

## 4.    SETTLEMENT PAYMENT TIMELINE AND DISTRIBUTION OF CHECKS

    **A.**    Within thirty-five ("35") calendar days of the Court's approval of the Settlement, Defendant shall provide to Plaintiffs' Counsel all of the settlement checks, including service awards, for each Settling Plaintiff by Fed-Ex or similar delivery. Checks to Settling Plaintiffs shall indicate on their face that they will be void after ninety (90) days. Accordingly, Settling Plaintiffs shall have ninety (90) days to cash, deposit, or otherwise negotiate each of their settlement checks.

    **B.**    Plaintiffs' Counsel will keep the checks in their sole possession until such time as each Settling Plaintiff executes the Release attached as Exhibit B, either electronically or by hand. Upon execution of the Release, Plaintiffs' Counsel will deliver the checks to the Settling Plaintiff and forward the executed Release to Defendant's Counsel. No Settling Plaintiff will receive a check from Plaintiffs' counsel until Plaintiffs' counsel is in possession of the release attached as Exhibit B.

    **C**.    Settlement checks that have not been cashed, deposited, or otherwise negotiated within 90 days shall be null and void. Defendant shall provide Plaintiffs' Counsel with a list of the Settling Plaintiffs who have *not* cashed their checks thirty (30) days prior to the expiration of this 90-day period.

    **D.**    Plaintiffs' counsel shall void and either return to Defendant's counsel or destroy check numbers 191999 in the amount of $3,060.32 (daily trial witness fee check); 100354 in the amount of $18,841.02 (prior Fladger settlement check); 100355 in the amount of $8,429.48 (prior Pikago settlement check); 100356 in the amount of $18,048.02 (prior Leggette settlement check); 191626 in the amount of $7,536.41 (prior Falls Legal fee check); 191627 in the amount of $3,371.79 (prior Falls Legal fee check); and 191628 in the amount of $7,219.21 (prior Falls

Legal fee check). Those proceeds will not be distributed or negotiated by Plaintiffs or Plaintiffs' counsel's law firm.

      **E.**     Excluding those checks referenced in Section 4(D) above which Plaintiffs' counsel will destroy or return to Defendant's counsel, Defendant will stop payment on all other outstanding settlement checks that it previously issued directly to the Plaintiffs in this case that have not been negotiated as of the date of the signing of this Agreement. Defendant shall be solely responsible for any costs associated with the stop payment order.

      **F.**     For those individuals who have already executed purported settlement checks during the course of litigation, Michael Clark, Jon Gibson, Andre Heatley, Kevin Kahle, and Alexander Reid. Defendant will receive an offset for the amount already paid against that individual's pro rata settlement award. Those amounts are demonstrated on Exhibit A.

**5.**     **RELEASE OF WAGE CLAIMS**

      Subject to the approval of the Court, in consideration of the benefits inuring to the Parties hereto, each and every Settling Plaintiff, on behalf of his/her respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, and assigns, releases and forever discharges (i) Defendant; (ii) any current or former subsidiary, parent company, affiliated entity, related entity, successor, assign, or division of Defendant; and (iii) any current or former officer, director, trustee, agent, employee, shareholder, representative, advisor, insurer, or attorney of any entity referenced in or encompassed by subsection (i) or (ii) hereof (collectively, "Releasees"), from any and all claims that were or could have been brought by him or her in the Litigation, whether known or unknown, through the date of this Settlement Agreement and Release, limited to wage claims under federal, state, or local law for hours worked, including but not limited to such claims under the Fair Labor Standards Act or any state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims for hours worked up to and including the date of this Settlement Agreement and Release. Likewise, Defendant, as defined above in this paragraph in subsections (i), (ii), and (iii), shall release the Named Plaintiff and all Opt-In Plaintiffs from any and all claims for breach of any independent contractor services agreement, indemnification, unjust enrichment/quantum meruit, and any and all other claims, whether known or unknown, that it may have brought in this litigation or separate litigation.

**6.**     **ACKNOWLEDGMENTS AND AFFIRMATIONS.**   By executing the attached Release, each Settling Plaintiff affirms that he or she has not filed, caused to be filed, or presently is a party to any claim against any Defendant, except those in the Litigation.

**7.**     **GOVERNING LAW AND INTERPRETATION.** This Settlement Agreement and Release shall be governed and interpreted in accordance with federal law and the law of South Carolina, to the extent federal law does not apply.

8.      **NONADMISSION OF WRONGDOING.**  The Parties agree that neither this Settlement Agreement and Release nor the furnishing of the consideration for this Settlement Agreement and Release shall be deemed or construed at any time for any purpose as an admission by the Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind. Defendant expressly denies any wrongdoing whatsoever in connection with the allegations in the Lawsuit.

9.      **AMENDMENT.**  This Settlement Agreement and Release may not be modified, altered, or changed except in writing and signed by all Parties.

10.     **ENTIRE AGREEMENT.**  This Settlement Agreement and Release sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties.  Plaintiffs acknowledge that they have not relied on any representations, promises, or agreements of any kind made in connection with their decision to accept this Settlement Agreement and Release, except for those expressly set forth in this Settlement Agreement and Release.

11.     **COUNTERPARTS.**  This Settlement Agreement and Release may be executed in one or more counterparts and by facsimile or email.  All executed copies of this Settlement Agreement and Release, and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

12.     **INVALID WITHOUT COURT APPROVAL.**  This Settlement Agreement and Release is subject to approval by the United States District Court for the District of South Carolina in the Litigation.  In the event it is not approved, it shall be deemed null and void, of no force and effect, and of no probative value, and the Parties hereto represent, warrant, and covenant that in that event it will not be used or referred to for any purpose whatsoever regarding the pursuit of the claims or defenses at issue in the Litigation.  In the event the Court does not approve the settlement, the Parties shall return to their respective positions immediately prior to the execution of this Settlement Agreement and Release.

13.     **NO SIGNATURE REQUIRED BY OPT-IN PLAINTIFFS.**  Because the Opt In Plaintiffs are so numerous, and because this Settlement Agreement and Release must be approved by the Court, it is impossible or impractical to have each Opt In Plaintiff execute this Agreement.  To confirm their agreement to the terms of this Settlement Agreement and Release, each Settling Plaintiff shall sign electronically or by hand the attached short-form Release, Exhibit B, prior to taking possession of their checks from Plaintiffs' Counsel.

14.     **RETENTION OF JURISDICTION.**  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

DocuSign Envelope ID: 69CC702A-959D-4F24-845F-BBBB81067A30

The Parties knowingly and voluntarily sign, and affirm that the signatory below is duly authorized to sign, this Settlement Agreement and Release as a valid and binding act of each, as of the date(s) set forth below:

**KNIGHT ENTERPRISES S.E., LLC**

By: _____          Date: _____

**DEFENDANTS' COUNSEL**

By: _____          Date: _____

**PATRICK WECKESSER (on behalf of himself and all Opt In Plaintiffs):**

By: _____          Date: 8/22/2019
                                                    _____

**PLAINTIFFS' COUNSEL**

By: _____          Date: _____

10

The Parties knowingly and voluntarily sign, and affirm that the signatory below is duly authorized to sign, this Settlement Agreement and Release as a valid and binding act of each, as of the date(s) set forth below:

**KNIGHT ENTERPRISES S.E., LLC**

By: _____    Date: _____

**DEFENDANTS' COUNSEL**

By: _____    Date: _____

**PATRICK WECKESSER (on behalf of himself and all Opt In Plaintiffs):**

By: _____    Date: _____

**PLAINTIFFS' COUNSEL**

By: _____    Date: _8-23-19_

10

The Parties knowingly and voluntarily sign, and affirm that the signatory below is duly authorized to sign, this Settlement Agreement and Release as a valid and binding act of each, as of the date(s) set forth below:

**KNIGHT ENTERPRISES S.E., LLC**

By: _____    Date: August 22, 2019

**DEFENDANTS' COUNSEL**

By: _____    Date: August 22, 2019

**PATRICK WECKESSER (on behalf of himself and all Opt In Plaintiffs):**

By: _____    Date: _____

**PLAINTIFFS' COUNSEL**

By: _____    Date: _____

10

# **EXHIBIT A**

| **LAST** | **FIRST** | **TOTAL WEEKS\*** | **PRO RATA FACTOR** | **UNADJUST. AWARD** | **SERVICE AWARD** | **OFFSET** | **TOTAL AWARD\*\*** |
|---|---|---|---|---|---|---|---|
| Annikey | Dixon | 170 | 5.16% | $16,762.74 | $2,500.00 | | $19,262.74 |
| Barrett | Courtney | 39 | 1.18% | $3,845.57 | | | $3,845.57 |
| Clark | Michael | 80 | 2.43% | $7,888.35 | | $2,256.40 | $5,631.95 |
| Corbitt | Michael | 46 | 1.40% | $4,535.80 | | | $4,535.80 |
| Dease | D'Andre | 114 | 3.46% | $11,240.90 | | | $11,240.90 |
| Dixon | Tyrone | 22 | 0.67% | $2,169.30 | | | $2,169.30 |
| Ebert | Blake | 165 | 5.01% | $16,269.72 | $2,500.00 | | $18,769.72 |
| Fladger | Jireh | 201 | 6.10% | $19,819.48 | | | $19,819.48 |
| Gibson | Jon | 91 | 2.76% | $8,973.00 | | $1,144.62 | $7,828.38 |
| Heatley | Andre | 224 | 6.80% | $22,087.38 | | $9,474.43 | $12,612.95 |
| Heyward | Kwome | 83 | 2.52% | $8,184.16 | | | $8,184.16 |
| Johnson | Marquis | 18 | 0.55% | $1,774.88 | | | $1,774.88 |
| Kahle | Kevin | 73 | 2.21% | $7,198.12 | | $500.00 | $6,698.12 |
| Keitt | James | 132 | 4.00% | $13,015.78 | | | $13,015.78 |
| Lausier | Daniel | 19 | 0.58% | $1,873.48 | | | $1,873.48 |
| Leggette | Alfonso | 185 | 5.61% | $18,241.81 | $2,500.00 | | $20,741.81 |
| Legree | Paul | 193 | 5.86% | $19,030.64 | $10,000.00 | | $29,030.64 |
| Liberty | Amy | 175 | 5.31% | $17,255.76 | | | $17,255.76 |
| Malone | Willie | 91 | 2.76% | $8,973.00 | $2,500.00 | | $11,473.00 |
| Maurey | Austin | 34 | 1.03% | $3,352.55 | | | $3,352.55 |
| McKinney | Matthew | 33 | 1.00% | $3,253.94 | | | $3,253.94 |
| McKinnon | West | 221 | 6.71% | $21,791.57 | $10,000.00 | | $31,791.57 |
| Ochieng | Brian | 135 | 4.10% | $13,311.59 | | | $13,311.59 |
| Papillion | Derek | 115 | 3.49% | $11,339.50 | | | $11,339.50 |
| Pikago | Michael | 165 | 5.01% | $16,269.72 | | | $16,269.72 |
| Reid | Alexander | 77 | 2.34% | $7,592.54 | | $1,468.97 | $6,123.57 |
| Stewart | Ushmartiyah | 28 | 0.85% | $2,760.92 | | | $2,760.92 |
| Thompson | Kimathi | 13 | 0.39% | $1,281.86 | | | $1,281.86 |
| Tubman | Alvin | 54 | 1.64% | $5,324.64 | | | $5,324.64 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Vanderkarr | George | 64 | 1.94% | $6,310.68 | | | $6,310.68 |
| Webb | Damon | 9 | 0.27% | $887.44 | | | $887.44 |
| Weckesser | Patrick | 30 | 0.91% | $2,958.13 | $10,000.00 | | $12,958.13 |
| Wilson | Nathan | 178 | 5.40% | $17,551.58 | | | $17,551.58 |
| Wyckoff | James | 19 | 0.58% | $1,873.48 | | | $1,873.48 |
| | | | | | | | |
| **TOTALS** | | **3296** | **100.00%** | **$325,000.00** | **$40,000.00** | **-$14,844.42** | **$350,155.58** |
| | | | | | | | |
| *Based on 3-year statute (with tolling) calculated to present date or date last worked | | | | | | | |
| **Adding service award and subtracting any offset | | | | | | | |

# EXHIBIT B

# Exhibit B

## RELEASE ENDORSEMENT TO BE DISTRIBUTED
## WITH SETTLEMENT CHECKS

*Weckesser, et. al. v. Knight Enterprises, S.E., LLC*
In the United States District Court for the District of South
Carolina
2:16-cv-2053-RMG

As a consequence of accepting, cashing and/or depositing the settlement check issued to me, I hereby forever discharge and release Defendant and each of its parents, divisions, current or former subsidiaries, affiliates, successors, assigns, divisions, current or former officers, directors, trustees, agents, employees, shareholders, representatives, advisors, insurers, attorneys from any and all claims that were or could have been brought by me in the above-reference Action, whether known or unknown, through the date of this Settlement Agreement and release, limited to wage claims under federal, state, or local law for hours worked, including but not limited to such claims under the Fair Labor Standards Act or any state minimum wage laws, state wage payment and collection laws, state overtime statutes, state common law and unjust enrichment, or pursuant to express or implied wage contract claims for hours worked up to and including the date of the signing of this Release.

_____          _____
Signature                                          Mailing/Street Address & Apt. No. *


_____          _____
Print Name                                        City, State, Zip Code *


_____          *This is the address we will use to
Date                                                  mail your checks and tax documents