RECEIVED USDC
CLERK, CHARLESTON, SC

2019 SEP 11  AM 11: 00

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| Patrick Weckesser, on behalf of himself and all others similarly situated, ) ) ) | |
| ) | Civil Action No. 2:16-cv-02053-RMG |
| Plaintiff, ) ) | |
| v.                                           ) | **ORDER** |
| ) | |
| Knight Enterprises S.E., LLC,      ) ) | |
| Defendant.               ) ) | |

This matter is before the Court on the Plaintiffs' unopposed motion for settlement approval (Dkt. No. 156). For the reasons set forth below, the Court grants the motion.

**I.      Facts**

Plaintiff Patrick Weckesser, a cable installation technician, filed this class and collective action on behalf of himself and all others similarly situated against Defendant Knight Enterprises S.E., LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act.[1] (Dkt. No. 1.) The Court granted conditional class certification on August 27, 2018. (Dkt. No. 36.) Thirty-three individuals have joined the case as opt-in plaintiffs, for a total of thirty-four plaintiffs. (See Dkt. Nos. 5, 8, 14, 46 - 61.) The Court granted final certification of the action on July 22, 2019. (Dkt. No. 118.)

The Parties have since reached a settlement agreement. The Plaintiffs have submitted to the Court extensive details regarding the proposed settlement, including a copy of the settlement agreement. (*Id.*) Because the FLSA requires Court approval for settlements, the Plaintiffs' now move, unopposed, for this Court to approve the proposed settlement. (Dkt. No. 156.)

---

[1] Plaintiffs are no longer proceeding under the South Carolina Payment of Wages Act Claim and did not seek to certify a Rule 23 class action. (Dkt. No. 91 at 2 n.1.)

## II.    Legal Standard

Parties are typically permitted to reach private settlements, but settlement agreements under the FLSA differ because they are not exclusively private transactions and federal courts are charged with the responsibility of scrutinizing FLSA settlements for fairness. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir.1986) ("Once the Act makes it impossible to agree on the amount of pay, it is necessary to ban private settlements of disputes about pay."); *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982). The FLSA's provisions are generally not subject to waiver, but a district court may approve a settlement if the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

## III.    Discussion

To determine whether to approve the proposed settlement, the Court must determine (i) whether the award reflects a fair and reasonable compromise over the issues in dispute, and (ii) whether the proposed award of attorneys' fees and costs is reasonable. Although the Fourth Circuit has not directly addressed what factors courts should consider when analyzing proposed FLSA settlements, courts tend to follow the Eleventh Circuit's analysis in Lynn's Food Stores, which asks whether there is a bona fide dispute and whether the proposed settlement is fair and reasonable. *See, e.g., Corominas v. ACI Holdings, LLC*, No. 2:15-CV-4372-PMD, 2016 WL 10520235, at *2 (D.S.C. 2016); *Saman v. LBDP, Inc.*, Civ. No. 12-1083, 2013 WL 2949047, at *2 (D. Md. 2013). Plaintiffs allege they were misclassified as independent contractors but were employees. Defendants deny those allegations. A bona fide dispute exists.

This Court has previously articulated the following factors to assess whether a settlement is fair and reasonable: "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery." *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 849 (D.S.C. 2016) citing *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JF A), 2009 WL 3094955, at *10 (E.D. Va. 2009).

The Parties have agreed to a total settlement amount of $600,000 ("Gross Settlement Amount"). (Dkt. No. 156-2 at 4 - 6.) This amount is offset by any settlement checks previously cashed in relation to the Defendant's prior solicitation of individual settlements. (*Id.*) $325,000 of the Gross Settlement Amount is distributed to the Plaintiffs on a *pro-rata* basis ("Net Settlement Fund"), and $40,000 in Service Awards to specific Plaintiffs. (*Id.*) The remaining $235,000, negotiated separately, will be distributed as attorneys' fees and costs to Plaintiffs' counsel. (*Id.*) Each Plaintiff will have the option of accepting or rejecting the individual settlement offer through an individual release sent with the settlement agreement. (Dkt. Nos. 156-1 at 4; 156-2 at 6, 17.) Any opt-in Plaintiff who does not accept the settlement will be dismissed without prejudice and have thirty days from the date the rejection is communicated to Plaintiffs' Counsel to file a subsequent claim. (*Id.*)

As to the Net Settlement Fund, it will be distributed to each Plaintiff (Named Plaintiff and the Opt-In Plaintiffs) on a *pro-rata* basis based on a formula approximating each Plaintiffs'

3

allegedly unpaid hours of overtime. The formula assumes that each Plaintiff worked overtime in half of their weeks' worked in the relevant time period, and that the Plaintiffs worked fourteen hours of overtime for those weeks. (Dkt. No. 156-1 at 6.) The formula assumes an average hourly rate of pay of $20, and uses a half-time overtime rate of $10 per hour for each allegedly unpaid hour of overtime. (*Id.*) The total amount, $325,000, is then distributed *pro-rata* based on the total amount of wages each Plaintiff is allegedly owed as a percentage of the total amount of wages all Plaintiffs are allegedly owed. (*Id.*) The Net Settlement Fund, $325,000, represents well over 100% of all wages allegedly owed (the Plaintiffs' are allegedly owed $230,720 in overtime wages based on the above calculation) and is 70% of all potential damages if the Plaintiffs were found to be entitled to liquidated damages.

The settlement is clearly fair and reasonable. To begin with, the amount and calculation reflects a fair and reasonable amount and a beneficial outcome for all Plaintiffs. Sufficient discovery has taken place here, and the Parties conducted extensive discovery, conducting twelve depositions and exchanging over 100,000 pages of documents, allowing the Parties to determine the strengths of their cases. (Dkt. No 156-1 at 2, 10.) The case has been pending since June 2016, went through extensive briefing for a motion to compel arbitration, an appeal, conditional class certification, motion for partial summary judgment, final certification, and various other motions, the Parties engaged in extensive and repeated arms-length negotiations, and the case settled the week before trial was scheduled to begin. (*Id.* at 2, 12.) Further, without settlement, the case would likely continue to be expensive and lengthy as an expensive multi-day trial was likely without settlement. Given the length of time, the discovery exchanged, and the extent to which both Parties attorneys are familiar with the case, they are in a good position to evaluate their claims and defenses and the likelihood of success at trial. There is further no evidence of fraud or

collusion, and instead the lengthy and contentious negotiations indicate that the negotiations were at arms-length. As explained in the Plaintiffs' motion, counsel in this case are experienced, with both Parties counsel having extensive experience in wage-and-hour litigation. (156-1 at 16.) Defendant, Defendant's Counsel, Plaintiff's Counsel and the Named Plaintiff have all signed the Settlement Agreement, and Plaintiffs' Counsel and the Named Plaintiff have indicated their support for the settlement. (Dkt. No. 156-1 at 16; 156-2.) The Parties also disagree as to the likelihood of success, particularly regarding proof of damages and potential for recovery of any judgment, which Plaintiffs acknowledge may be complex issues. (Dkt. No. 156-1 at 13 – 16.) Further, the amount of the award, which represents over 100% of the alleged unpaid wages, and 70% of all potential damages if liquidated damages were found, is clearly fair and reasonable. The award also includes a deduction for any amounts already paid as part of an attempted prior settlement. The Court has already indicated its support for this deduction (Dkt. No. 138), and further finds it to be fair and reasonable as the amounts were sent as part of an attempted settlement, which this agreement now formalizes. Finally, the Court further finds the agreement fair and reasonable as every Opt-In Plaintiff has the option of accepting or rejecting the approved settlement, giving each Plaintiff notice and the ability to consider the settlement individually. In light of the stage of litigation, absence of fraud, settlement amount, experience of counsel, and uncertainties as to success, the Court finds the Net Settlement Fund to be fair and reasonable.

Further, the Named Plaintiff and each Opt-In who was deposed will also receive a service award. (Dkt. No. 156-2 at 14 – 15.) The service awards range from $2,500 to $10,000. The three individuals, including the Named Plaintiff, who provided the most time, including attending mediation, aiding in responding to discovery, being deposed, and other assistance, will each receive $10,000, and four other Opt-In Plaintiffs who were deposed and aided in responding to

discovery will receive $2,500 each. (Dkt. Nos. 156-1 at 28 – 29; 156-2 at 14 – 15.) Service awards, or incentive payments, have been awarded in FLSA collective actions. *See, e.g. Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986, at *16 (D.Md. July 22, 2013). To determine whether such a payment is warranted, the Court must "consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* quoting *Hoffman v. First Student, Inc.*, No. CIV. WDQ-06-1882, 2010 WL 1176641, at *3 (D.Md. Mar. 23, 2010). Without the actions of the Named Plaintiff, this case would not have been brought, and the beneficial settlement for the Opt-In Plaintiffs could not have been achieved. Further, the awards reflect substantial work performed by each of the Plaintiffs that was necessary to achieving the beneficial result here, including aiding in discovery, mediation, trial preparation and sitting for a deposition. The service awards were also negotiated independently of the award for damages, and do not diminish the award to the Opt-in Plaintiffs. Finally, the proposed awards are consistent with service awards granted in other FLSA cases. *See, e.g. Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *22 (D.N.J. Apr. 8, 2011) (approving $10,000 service award to each named plaintiff); *Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D.Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case). Accordingly, the Court finds the Service Awards to be appropriate.

Finally, $235,000 for attorneys' fees and costs is reasonable and, as it was negotiated separately from the Net Settlement Fund discussed above, permissible under the FLSA. (Dkt. No. 156-1 at 18.) Reviewing the twelve factors articulated by *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). (1) Plaintiffs' counsel expended 1,274 hours litigating and negotiating the

6

claims over the course of close to three years, attended twelve depositions, reviewed over 100,000 pages of discovery, and had $13,169.82 in out of pocket costs (Dkt. No. 156-4 at 13); (2) the case involved difficult issues, implicating difficult damages calculations given the lack of records and required management of a collective action; (3) the negotiation of this settlement required and was benefited by skilled counsel with FLSA experience; (4) Plaintiffs' counsel was precluded from pursuing other employment, both because of the extensive 1,274 hours spent working on this case and Plaintiffs' Counsel represented that they received and declined 208 inquiries from May 1, 2019 through August 19, 2019, when this matter consumed much of the Plaintiffs Counsel's time; (5) the customary fee for 1,274 hours of legal work generally exceeds $235,000, and represents an hourly rate below Plaintiffs' counsels' regular hourly rates of $275.00 and $325.00, which would equal a lodestar of $372,453.90; (6) the case was taken on as a contingent fee, based solely on potential recovery of costs and fees if Plaintiffs prevailed or a settlement was reached; (7) while there is no indication of any time limits imposed by the Plaintiffs, the statute of limitations in FLSA actions required fast action by Plaintiffs' counsel; (8) as discussed above, Plaintiffs' counsel negotiated a very beneficial result for the Plaintiffs; (9) Plaintiffs' counsel has extensive experience in FLSA litigation; (10) there is no indication this case was particularly undesirable for a wage and hour claim, though the Court notes the difficulty and risk of taking on FLSA litigation in general and on a contingent basis; (11) this case was first filed in June 2016 and therefore Plaintiffs' attorney and Plaintiffs have a longstanding relationship; (12) if measured as a percentage of the settlement, the attorneys' fee is commensurate with awards in similar cases. Indeed, it represents a lower percentage of the overall settlement and a lower percentage of the lodestar amount than this Court has previously found reasonable for the same counsel. *See Irvine v. Destination Wild Dunes Mgmt., Inc.*, 204 F. Supp. 3d 846, 850 (D.S.C. 2016). Therefore, under the Barber factors,

7

the proposed attorneys' fees are reasonable. Finally, when checked against Plaintiffs' attorneys' purported lodestar of $372,453.90 and $13,169.82, it is clear that attorneys' fees and costs of $235,000 are reasonable here.

## IV.  Conclusion

For the reasons above, the Court **GRANTS** the Parties' joint motion to approve settlement (Dkt. No. 156) and the action is **DISMISSED WITH PREJUDICE**.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Court Judge

September  11, 2019
Charleston, South Carolina

8